UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:09-CR-84 |
| | ) | |
| NICHOLAS RAFFA, *ET AL.* | ) | |

**REPORT AND RECOMMENDATION**
**REGARDING HOOPS' MOTION TO SUPPRESS (DOC. 254)**

On March 7, 2007, the vehicle driven by defendant James Hoops was stopped by officers of the First Judicial District Drug Task Force on the basis of a traffic violation by the driver. The ensuing search of that vehicle, and thereafter the search of a co-defendant's motel room, revealed quantities of illegal drugs, controlled substances, drug paraphernalia, and Western Union receipts. Claiming that the vehicle stop was pretextual and without probable cause, defendant has filed a motion to suppress all evidence discovered and seized from his person, his car, and the motel room. (Doc. 254).

This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 22, 2010.

Only two witnesses testified: Special Agent Matt Thompson of the Tennessee Bureau of Investigation, who was Director of the First Judicial District Drug Task Force in March 2007; and Special Agent Sollie Rabun, a Special Agent of the First Judicial District Drug

Task Force.[1]

On March 7, 2007, the manager of the Red Roof Inn in Johnson City contacted agents of the First Judicial District Drug Task Force to report that he suspected that illegal drug activity was occurring in Room 126. He went so far as to provide the agents with the name and physical description of the occupant of that room. The task force agents, including Thompson, shortly thereafter established surveillance of the motel and Room 126. During the course of that surveillance, the agents observed two white males walk from the motel parking lot and approach a dark-colored Saturn car in the nearby O'Charley's Restaurant parking lot. One of those men was defendant Hoops. The two men talked to someone in the Saturn automobile, after which they returned to the motel parking lot. They then entered a silver Chevrolet Malibu automobile with Florida tags, which then pulled out of the motel parking lot onto Broyles Drive. Believing that they had just observed a drug transaction occur in the O'Charley's parking lot, drug task force agents, one of whom was Rabun, followed the Chevrolet. Agent Rabun observed the Chevrolet make a left-hand turn from Broyles Drive onto North Roan Street. On the basis that a left-hand turn was illegal, the agents effected a traffic stop.

The defendant Hoops was driving the Chevrolet Malibu, the co-defendant Getty was in the front passenger seat; and the co-defendants Matthew Derks and Daniel Shannon were

---

[1] The sole factual and legal issue presented by defendant's motion to suppress is whether the traffic stop of the vehicle he was driving was supported by probable cause. In light of this extremely limited dispute, most of the facts contained in this report and recommendation are gleaned from the United States' response to the motion.

in the rear seat.

Because of their suspicion that two occupants had just concluded a drug transaction with the driver of the Saturn car, the agents requested permission to conduct pat-down searches of the occupants of the Chevrolet, and all consented. Getty was found to be in possession of seventeen Roxycontin pills. Simultaneously with the pat-down searches of the defendants, a trained narcotics dog was walked around the car and it alerted to the presence of drugs. A search of the vehicle itself revealed crack cocaine, a bottle of Roxycontin pills, a Hydrocodone pill, and one morphine pill.

Getty told the agents that he was staying at the Red Roof Inn and he consented to a search of his room. That search revealed fourteen grams of cocaine, seventy-five Roxycontin pills, marijuana, digital scales, paraphernalia, and Western Union receipts.

The defendant does not contest that he and the other occupants of the vehicle consented to the pat-down searches, nor does he contest that Getty consented to a search of his motel room. A consent to search, of course, is an exception to the Fourth Amendment's requirement for a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Neither does this defendant contest that a narcotics dog alerted to the presence of drugs in the car, which of course constituted probable cause to search the car for illegal drugs. *See, e.g., United States v. Place*, 462 U.S. 696, 707 (1983); *United States v. Diaz*, 25 F.3d 392, 393-4 (6th Cir. 1994). Rather, he argues that he committed no antecedent traffic violation, as a result of which there was no basis to stop his vehicle in the first place. Since the occupants' consents to search their persons, Getty's consent to search his motel room, and the presence and alert

of the narcotics dog all flowed directly from that traffic stop, defendant argues that all evidence subsequently discovered should be suppressed.

The discovery of the illegal drugs and the other evidence on Getty's person, in Getty's motel room, and in the car directly and inexorably flowed from the traffic stop. Absent the traffic stop, there would have been no searches.

The law is well-established that an officer's subjective motivation in making a traffic stop is irrelevant so long as he had probable cause to believe that a traffic violation occurred. All other issues aside, a search subsequent to a traffic stop will not be vitiated merely because the officer was motivated to make that stop because he suspected that an occupant had committed some other crime so long as the officer had probable cause to believe that a traffic violation occurred. In other words, the officer's subjective motivation is irrelevant if probable cause existed to believe the driver committed a traffic violation. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993); *Whren v. United States*, 517 U.S. 806 (1996); *Arkansas v. Sullivan*, 532 U.S. 769 (2001). Of course, if there was no probable cause to believe that a traffic violation occurred, as a result of which there was no basis to stop the vehicle, any searches which flowed from that vehicle stop, even those based upon consent, must be suppressed as "fruit of the poisonous tree," *United States v. Gross*, 550 F.3d 578 (6th Cir. 2008; *Wong Sun v. United States*, 371 U.S. 471 (1963).

Defendant's argument is straight-forward: he claims his left turn was not illegal. Defendant's argument is incorrect. The street upon which defendant was driving, Broyles Drive, has two lanes in each direction. At its intersection with Broyles Drive, the two lanes

4

for traffic headed in the direction defendant was traveling are clearly marked with arrows and instructions. The pavement of the right or outside lane is marked with white painted arrows that curve to the right indicating to drivers that the right lane is for the purpose of right turns only. Moreover, the word "ONLY" is also painted on the pavement in that lane.[2]

In the left or inside lane, the pavement is painted with arrows that point straight ahead, indicating even to illiterate drivers that they must proceed straight ahead through the intersection. The word "ONLY" is painted on the pavement on the inside lane between the arrows.[3]

Defendant turned left from the inside lane of Broyles Drive onto North Roan Street in direct contravention of both the arrows and written instructions on the pavement in this lane indicating that the only allowed maneuver was to drive straight through the intersection, i.e., neither a right nor left turn was legal. Defendant made a left turn, thus committing a traffic offense. The fact that the officers gave him no ticket or citation for that traffic offense is utterly irrelevant to the constitutionality of the traffic stop.

The traffic stop was based on probable cause to believe that defendant committed a traffic violation. Since defendant does not contest that he and the other occupants consented to pat-down searches of their persons or that Getty consented to a search of his motel room, or that the drug dog positively alerted to the presence of drugs in his vehicle, there is no constitutional basis to suppress any of the evidence thus discovered and seized.

---

[2] Ex. 1.

[3] *Id*.

It is respectfully recommended that defendant's motion to suppress be denied.[4]

Respectfully submitted,

    s/ Dennis H. Inman    
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).